## Alice C. Welsh, Appellant, *v.* The Pennsylvania Railroad Company.

*Negligence—Railroads—Master and servant—Fellow-servants—Engineer and fireman.*

A railroad company is not liable in damages for the death of a locomotive engineer, in its employ, where it appears that his death was caused by the negligence of a fireman of another train in misplacing a switch.

Argued May 16, 1899. Appeal, No. 410, Jan. T., 1898, by plaintiff, from order of C. P. Lancaster Co., June T., 1896, No. 18, refusing to take off nonsuit. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before BRUBAKER, J.

At the trial it appeared that plaintiff's husband, Samuel S. Welsh, was a locomotive engineer, in the employ of the defendant company, and that on the night of March 17, 1896, while running a passenger train from Harrisburg to Philadelphia, he was killed in a collision with a freight train at a point about one mile west of Highspire. The evidence showed that the fireman of the freight engine had, contrary to orders, left open a switch, and that the decedent's train ran through this switch, and collided with the freight train. The negligence charged against the company was that it " did allow an engine and train of cars moving east, to cross over from the west bound passenger track, through an open or misplaced switch, to the east bound passenger track and did allow a second engine and train of cars moving east on aforesaid east bound passenger track to

run into the other or first engine and cars at," etc; and "did
fail to have and maintain a track lamp or pot signal at the west
end or east end, at both ends, of a switch leading from the west
bound passenger track in an eastwardly direction to the east
bound passenger track, whereby an engine and train of cars
moving east crossed over aforesaid open or misplaced switch
from said west bound passenger track to said east bound pas-
senger track."

There was evidence that Jacob F. Linville, the assistant track
foreman, was intoxicated at the time of the accident, and was
at work in cleaning snow from the tracks; but there was noth-
ing to show that Linville's drunkenness had anything to do with
the accident. It did appear, however, that he did see the fire-
man open the switch. The court entered a compulsory nonsuit
which it subsequently refused to take off, filing the following
opinion:

Before there can be a recovery had by the plaintiff in this
case it is incumbent upon her to show by competent proof the
position which she assumes here; which is, that this accident,
or the proximate cause of this accident, was an omission of duty
on the part of Linville, an incompetent employee; and, secondly,
that the company was negligent in not having placed a pot lamp
at the switch in question. In passing upon these questions, we
will follow the order of the learned counsel who have discussed
this matter, and pass upon the second count in the statement
first. It has always been the law of this state, at least for a
number of years, that the risk of injury from the act of a co-
employee is one of the risks which the employee assumes when
he engages in the service to which the employment pertains.
And there is another rule of law, and that is, in accepting an
employment the employee is assumed to have notice of any pat-
ent risks incident thereto of which he is informed, or, of which
it is his duty to inform himself. The engine driver in this case,
Mr. Welsh, has been in the employ of the defendant for a period
of about eight years; he knew the condition of these tracks
during all this period and during the period of their construc-
tion. He had an opportunity to ascertain the character of these
switches, and, therefore, by continuing in its service after he
was cognizant of the character of these switches, he is assumed
to have a requisite knowledge of them; and therefore, the plain-

tiff could not recover upon that count in the statement. It is not necessary to go further, so far as that question is concerned. The other position is one which, if fairly made out by proof, would hold the defendant company responsible. It is true that the company is responsible for employing an incompetent or unfit person in its service; or, if the company retains such an unfit person, after having knowledge of his condition, it would be responsible for the acts of the servant. The rule as to the burden of proof, however, in this action is different from the proof that would be required in the case of an action brought by a passenger. It is on the plaintiff. The presumption of negligence on the part of a railroad company in case of an injury to an employee is against the employee; and it is the duty of the plaintiff, before the jury can be asked to render a verdict against the company, to prove the act affirmatively. The mere fact of an accident having happened or an injury having occurred is not sufficient. Now, the plaintiff in this case admits that an injury caused by the negligence of an employee is not sufficient to sustain a recovery. They admit that requisite; but they go a step further and attempt to show that it was caused by the omission of an employee, who was an incompetent and unfit person for the position, by reason of habits of intoxication. They endeavored to show here that this accident could not have occurred if it had not been for the omission of an act that ought to have been performed by Linville, the assistant trackman.

Now, what is the effect of the testimony that has been presented? It has been shown that there was a watchman at this place; and, undoubtedly, under the rules as they have been presented to you, it was the duty of the watchman to see that the switches were in proper condition; that they were set, and that they were locked for the main track. It was the duty of the watchman carefully to examine the track and see that it was in a safe condition. It has not been shown by the testimony, so far as we can see, that Linville's duty was to see that these switches were locked or unlocked, or even that he was to watch the track or to examine it after the passing of each train. It is true, it is the duty of foremen of the different divisions, during heavy storms, to detail all hands to watch the road and take precaution to prevent accident; and this has been the case in this instance, though the watchman, Linville, at 11 o'clock the night before the

accident, was called in from duty, and he must have been called in by his supervisor, Mr. Welsh, the foreman of the tracks. The watchman was on duty there all that time till he was called out again, which was at half past two o'clock the next morning. The watchman called him up, and said he had orders for them to go out and clean the switches; that they were drifting shut, and that he should take another hand with him. Mr. Linville got up, and went and called Duncan, and woke him up, and they both started for the place of those switches. They had half a mile to walk to this place. As soon as they got there, they commenced to perform their duty by sweeping the first switch they came to. It wasn't their duty to go to the other end, to the farthest switch first. It was, doubtless, their duty to sweep and clean off the first switch. While they were cleaning off this switch, a freight train approached and stopped, the fireman jumped off the engine, and while he was working at the switch to allow the freight engineer to pass over to the west bound passenger track with his train, this man, Linville, and his companion walked up and said to the fireman: "Stranger, if you will allow me to brush away the snow, you can turn that lever over easy." The fireman said: "I can turn it over without that." And as the fireman turned the switch, Linville and his companion went back to their work of cleaning off the snow at the other switch. We do not agree with the learned counsel for the plaintiff, that it was their duty then to go to work and clean the switch first at the place where the accident happened. It wasn't his duty to see that the switch was in condition till after they had come to it to open and clean up. If, after he had reached the place of the accident and had cleaned the switch, he had seen the track open, and he then hadn't closed it and locked the switch, and the train had run across, then, no doubt, the accident would have been caused by some act of his, some specific act of negligence. The evidence, so far as we can see, shows no omission of duty on his part that night. There is no specific act of negligence shown here, because he was performing his duty as he was ordered to perform it, and as he said he did perform it, and as all the circumstances surrounding the case show he was in the act of performing his duty at the time this accident happened. It would be a mere conjecture on the part of the jury, if we left the case to them,

to find that this man was guilty of an omissson of duty that night, and they found for the plaintiff. We are sorry, in one respect, that we are obliged to so decide. It is an unfortunate accident. Our sympathy is with the plaintiff. But it is the duty of the plaintiff to make out a case of negligence clearly against the defendant, for the reasons given, before she can recover from the company defendant. It is unfortunate that the widow and the children have no remedy. In such a case it is natural that our sympathy should be for them; but we have here a simple duty to perform, and that is, to pass upon the law as it is laid down to us in our books. We have done so.

*Error assigned* was the order of the court.

*C. E. Montgomery* and *J. Hay Brown,* of *Brown & Hensel,* for appellant, cited McCombs v. Ry. Co., 130 Pa. 182; Erie & W. V. R. R. Co. v. Smith, 125 Pa. 266; Tissue v. R. R. Co., 112 Pa. 91; Lewis v. Seifert, 116 Pa. 647; P. W. & B. R. R. Co. v. Keenan, 103 Pa. 124; New York, Lake Erie, etc., R. R. Co. v. Daugherty, 11 W. N. C. 439; Ellis v. R. R. Co., 95 N. Y. 546; Grand Trunk Ry. Co. v. Cummings, 106 U. S. 700; Beach on Contributory Neg. (2d ed.) 448; Huntingdon & Broad Top R. R. Co. v. Decker, 84 Pa. 419; Penna. R. Co. v. Books, 57 Pa. 339; Hughes v. R. R., 164 Pa. 178; West v. Erie City Iron Works, 149 Pa. 263.

*H. M. North,* for appellee, cited Baulec v. R. R. Co., 5 Lans. 436; Tinney v. Boston & Albany R. R. Co., 62 Barb. 218; Walker v. Boston & Maine R. R. Co., 1 Am. & Eng. R. R. Cases, 141; Gilman v. R. R. Co., 10 Allen, 233; Baldwin v. Penna. R. Co., 2 Lancaster Bar, No. 15; Ryan v. R. R. Co., 23 Pa. 384; Caldwell v. Brown, 53 Pa. 453; O'Donnell v. R. R. Co., 59 Pa. 239; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; McCool v. Coal Co., 150 Pa. 638; McGinley v. Levering, 152 Pa. 366; Spancake v. R. R. Co., 148 Pa. 184; Reiser v. Penna. R. Co., 152 Pa. 38; Kennelty v. R. R. Co., 166 Pa. 60; Dealey v. R. R. Co., 21 W. N. C. 45.

PER CURIAM, May 24, 1899:

In any view of the testimony in this case the negligence alleged against the defendant was the negligence of a co-employee, and

therefore there could be no recovery.   We do not understand
that the habit of drunkenness on the part of Linville had any-
thing to do with the cause of the accident.   Without engaging
in a detailed discussion of the testimony on the subject of his
acts or omissions, it is in our judgment entirely insufficient to
authorize a verdict against the defendant.   The assignments of
error are dismissed.

Judgment affirmed.